UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X

DINA JOHN,                                :

                    Plaintiff,
                                          :
          - against -                                **MEMORANDUM AND ORDER**
                                          :
NEW YORK CITY DEPARTMENT OF                          04 Civ. 5861 (NRB)
EDUCATION,                                :

                    Defendant.  :

-------------------------------X

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

          Plaintiff Dina John ("plaintiff") has brought this action

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e et seq. ("Title VII"), the Americans with Disabilities

Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"), 42 U.S.C. § 1981

("Section 1981"), the New York State Human Rights Law, Executive

Law § 290 et seq., and New York City Administrative Code § 8-101

et seq., alleging that she was discriminated against in her

employment on the basis of race, national origin and perceived

disability.    Defendant moves for summary judgment on all of

plaintiff's   claims.    For   the   reasons   set   forth   below,

defendant's motion is granted in its entirety.

                          **BACKGROUND**[1]

--------------------

[1] Except where noted, the following facts are not disputed.

Plaintiff is an African-American female of Guyanese descent. See Pl. Local Civil R. 56.1 Statement of Undisputed Facts ("Pl. 56.1 Statement") at ¶ 1; Def. Local Civil R. 56.1 Statement of Undisputed Facts ("Def. 56.1 Statement") at ¶ 1. In September 1999, plaintiff started working for defendant New York City Department of Education, also known as the New York Board of Education ("BOE" or "defendant"), when she was hired to teach art as a regular substitute teacher at Intermediate School 183 ("IS 183") in the Bronx. See Pl. 56.1 Statement at ¶ 2, Def. 56.1 Statement at ¶ 1, Ex. C at 103-4. Plaintiff resigned from this position on June 11, 2001 in order to accept a fellowship. See Def. 56.1 Statement, Ex. F. In either September or October 2001, plaintiff resumed her employment with BOE when she was hired to teach biology as a regular substitute at Walton High School ("Walton") in the Bronx. See Pl. 56.1 Statement at ¶ 3; Def. 56.1 Statement, Ex. C.

Plaintiff apparently injured her back at Walton while carrying a projector to a classroom on February 14, 2002. See Pl. 56.1 Statement, Ex. P; Def. 56.1 Statement, Ex. D at 52. She worked the next day and then traveled to England for a week beginning on or about February 16, 2002. See Def. 56.1 Statement, Ex. D at 53-54. After returning from this trip, plaintiff took sick leave from approximately February 25, 2002 to April 20, 2002. See id. at 55-56; Def. 56.1 Statement, Ex.

2

H.   Plaintiff was examined by Dr. Lourdes P. Esteban on February 27, 2002, who diagnosed plaintiff as having "lumbar sacral sprain/radiculopathy" and advised her to rest for a month.   See Pl. 56.1 Statement, Ex. P at 13.   Dr. Esteban saw plaintiff again on April 3, 2002 and apparently advised her to rest for another month and return to work on April 22, 2002.   See Pl. 56.1 Statement, Ex. P at 16.   When plaintiff returned to Walton, she filed an "Application for Excuse of Absence for Personal Illness (Sick Leave)" which was ultimately approved as an "ordinary illness" but denied as a "line of duty injury."   See Def. 56. 1 Statement, Exs. H, I.   As a result, plaintiff's sick leave was authorized, but she did not receive pay for these days.   See Def. 56.1 Statement, Ex. D at 56-7.

Plaintiff continued to teach at Walton until either May or June of 2002.   See Pl. 56.1 Statement at ¶ 3; Def. 56.1 Statement at ¶ 9.   Plaintiff's employment was terminated after she appeared before a committee responsible for hiring decisions and informed them that she wanted to leave Walton.   See Pl. Aff. in Opp'n to Def. Mot. dated April 26, 2006 ("Pl. Aff.") at ¶ 8; Def. 56.1 Statement, Ex. D at 94-5.   At this point, plaintiff was placed "in excess."   When teachers are designated to be "in

3

excess", they are apparently placed on a preference list for employment in other schools. See Pl. Aff. at ¶¶ 8,9.[2]

In September 2002, plaintiff began working at P.S. 287 in Brooklyn. See Pl. Aff. at ¶ 9. She was hired as a regular substitute art cluster teacher by Principal John Khani ("Principal Khani"). See Pl. 56.1 Statement at ¶ 5; Def. 56.1 Statement, Ex. D at 108. A cluster teacher is an elementary school teacher with a specialty in a specific subject area. See Declaration of John R. Khani dated February 28, 2006 ("Khani Decl.") at ¶ 8.

Sometime before plaintiff started working at P.S. 287, the school applied for funding for a computer lab intended to improve student literacy. See Khani Decl. at ¶ 9. According to Principal Khani, the proposal requested $100,000 which did not include funding for the salary of an additional computer and literacy teacher. See id.[3] In late November 2002, Principal Khani learned that the requested funding had been awarded to

---

[2] Defendant has explained that "[e]xcessing occurs when a school does not need the same number of teachers or staffing as it did in the previous year. When this occurs, generally the least senior person in the particular license area is placed in excess and can move to a vacancy in another school in this district." Def. 56.1 Statement at n.4.

[3] Plaintiff's termination letter dated December 2, 2002 explains that the termination was because the school "had just been advised that [it] ha[d] received a grant for a wireless computer lab teacher who will be infusing literacy and technology within Room 323." See Pl. 56. 1 Statement, Ex. K. Plaintiff has not asserted that she was certified to teach either computer or literacy skills.

4

P.S. 287.  See Khani Decl. at ¶ 11.  The new computer lab was to be installed in Room 323, which was plaintiff's classroom and across the hall from the school's existing computer lab.  See id.  Principal Khani alleges that at this time he concluded he had to terminate one of the existing cluster teachers in order to hire someone who was proficient in teaching both literacy and computer skills.  See Khani Decl. at ¶ 12.  Principal Khani also alleges that his decision to terminate plaintiff was determined by the fact that she was the least senior cluster teacher and the least senior teacher in the school.  See Khani Decl. at ¶ 12; Pl. Aff. at ¶ 15.[4]

During a student altercation on November 25, 2002, plaintiff injured her arm and finger and filed an injury report the same day.  See Def. 56.1 Statement, Ex. L.  Plaintiff sought treatment from a doctor, who diagnosed a muscle sprain and advised her to rest.  See Def. 56.1 Statement, Ex. M.  When plaintiff returned to work on December 2, 2002, she filed an "Application for Excuse of Absence for Personal Illness".  See Def. 56.1 Statement, Ex. N.  Plaintiff requested that her injury be classified as a line-of-duty injury and that her two-day

---

[4]   Plaintiff has argued that Khani erroneously calculated her seniority because she had been working for the BOE for four years at the time of her termination.  See Compl. at ¶ 19.  However, seniority at P.S. 287 is calculated based on the length of the teacher's employment at the school.  See Khani Decl. at ¶ 12.  Plaintiff has conceded that if seniority is calculated in this manner, she did not have seniority.  See Def. 56.1 Statement, Ex. D at 147-48.

5

absence be excused with pay and without any deduction from her sick leave account.   See id.   Principal Khani approved this application.   See id.   During the week after plaintiff returned to work, she apparently took an additional two days of leave for a colonoscopy.   See Pl. Aff. at ¶ 10.[5]

Principal Khani sent plaintiff a termination letter dated December 2, 2002, which plaintiff received on December 9, 2002. See Pl. 56.1 Statement, Ex. C at ¶ 10, Ex. L; Def. 56.1 Statement, Ex. S at ¶ 7, Ex. U.   The letter informed plaintiff that December 20, 2002 would be her final day at P.S. 287.   See Pl. 56.1 Statement, Ex. K.   Thereafter, plaintiff's union representative later spoke to Principal Khani and persuaded him to employ plaintiff as a day-to-day substitute from December 20, 2002 to January 21, 2003.[6]   See Def. 56.1 Statement, Ex. Q; Khani Decl. at ¶ 14; Pl. 56.1 Statement, Ex. M.   On December 19, 2002, Principal Khani sent a memorandum to plaintiff discussing her employment status.   See Pl. 56.1 Statement, Ex. N.   The memo reiterated that December 20, 2002 would be her last day as an art cluster teacher, but confirmed that the school would continue to employ her until January 31, 2003 as a day-to-day

---

[5] At this time, plaintiff apparently had an intestinal infection. See Pl. Aff. at ¶ 11, Pl. 56.1 Statement, Ex. Q.

[6] Principal Khani has stated that he agreed to let plaintiff work as a daily substitute until January 31, 2003 so that she would be eligible to receive summer pay.   See Khani Decl. at ¶ 14.

6

substitute for absent teachers as needed.  See id.  The memo
clearly stated that "[a]s of January 31, 2003, [plaintiff's]
services at '287 will terminate."  Id.

At bottom, plaintiff contends that the computer lab served
as a pretext for Principal Khani to terminate her and that the
decision was actually motivated by her race, national origin,
and perceived disability.  See Compl. at ¶¶ 18, 26.[7]  Plaintiff
claims that the usual practice of the BOE in such situations is
to place teachers "in excess" so that they can be reassigned.
See Pl. Aff. at ¶ 9; Compl. at ¶ 17.  She also claims that
Principal    Khani    or    other    school    employees    improperly
"classified" her licensing qualifications and seniority and that
these errors contributed to her termination.  See Compl. at ¶¶
19-23.    Finally,  plaintiff  alleges  that  Principal  Khani
repeatedly told her to keep her voice down at school because he
did not like her accent and that these comments serve as
additional  evidence  of  Principal  Khani's  bias  against  her
national origin.  See Pl. Aff. at ¶ 13.

---

[7]  We note that the complaints plaintiff filed with the EEOC and
SDHR contained factual allegations beyond those asserted in her
federal complaint.  For example, she previously alleged that Principal
Khani "harassed" a secretary who wore her hair in dreadlocks and cited
various defects in plaintiff's classroom facilities as evidence of
discrimination at P.S. 287.  See Def. 56.1 Statement, Exs. S, V.  In
reciting the relevant facts, we have focused on the allegations set
forth in the federal complaint and plaintiff's affidavit.

On October 8, 2003, plaintiff filed a notice of claim against defendant and the United Federation of Teachers Union with New York City's Office of the Comptroller alleging "discrimination on the basis of disability, national origin, sex, wrongful termination, and union contract matters." Def. 56.1 Statement at ¶ 24, Ex. R. On October 14, 2003, plaintiff filed a charge of discrimination against the defendant with the Equal Employment Opportunity Commission ("EEOC"). See Def. 56.1 Statement, Ex. S. On October 31, 2003, the EEOC notified plaintiff that it would not investigate her claim because it was untimely, but notified her of her right to sue. Def. 56.1 Statement, Ex. T. On November 18, 2003, plaintiff filed a complaint against the defendant with the New York State Division of Human Rights ("DHR"). See Def. 56.1 Statement, Ex. V. On March 9, 2004, DHR sent plaintiff a determination explaining that their investigation had yielded no evidence to support plaintiff's allegations of discrimination. See Def. 56.1 Statement, Ex. W. On April 30, 2004, the EEOC informed plaintiff that it was adopting DHR's findings and again notified her of the right to sue. Def. 56.1 Statement, Ex. X. Plaintiff filed the complaint in this action on July 28, 2004.

## DISCUSSION

### I. Standard of Review

8

Summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the initial burden of showing that no disputes of material fact exist. See, e.g., Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736, 742 (2d Cir. 1998). To successfully oppose such a motion, a nonmoving party must affirmatively set forth facts showing that there is a genuine issue for trial. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). There is a genuine issue of fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Entry of summary judgment is required when a nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In resolving such motions, we "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." Nora Beverages, 164 F.3d at 742 (quoting Adams v. Dep't Juvenile Justice of the City of New York, 143 F.3d 61, 65 (2d Cir. 1998)).

9

Finally, we are mindful of case law establishing that "trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." Chertkova v. Connecticut Gen. Life Ins. Co., 92 F.3d 81, 87 (2d Cir. 1996)(citing cases); see also Bickerstaff v. Vassar Coll., 196 F.3d 435, 448 (2d Cir. 1999)("[E]mployers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law."). However, this does not absolve the plaintiff from the responsibility of producing sufficient evidence from which a reasonable jury could return a verdict in her favor. See Anderson, 477 U.S. at 249.

## II.   Title VII and ADA Claims

Prior to commencing a federal lawsuit alleging employment discrimination in New York, plaintiffs must file their claims with the EEOC no later than 300 days after the allegedly discriminatory action.   See 42 U.S.C. § 2000e-5(e)(1); Pikulin v. City Univ. of New York, 176 F.3d 598, 599 (2d Cir. 1999); Ford v. Bernard Fineson Dev. Ctr., 81 F.3d 304, 307 (2d Cir. 1996).   This requirement applies to both ADA and Title VII claims.   See 42 U.S.C. § 12117(a); Harris v. City of New York, 186 F.3d 243, 247-48 (2d Cir. 1999).   Where a plaintiff fails to

10

file a claim with the EEOC within the allotted period, the federal action is time-barred. See, e.g., Zerilli-Edelglass v. New York City Transit Auth., 333 F.3d 74, 81 (2d Cir. 2003).

"It has long been settled that a claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct." Flaherty v. Metromail Corp., 235 F.3d 133, 137 (2d Cir. 2000) (citing Delaware State Coll. v. Ricks, 449 U.S. 250, 258 (1980)). In this case, defendant contends that plaintiff's Title VII and ADA claims accrued on December 9, 2002 when she received the first termination letter from Principal Khani. See Def. Mem. at 2-3. Plaintiff contends that the second memoranda from Principal Khani, which informed her that P.S. 287 would continue to employ her as a day-to-day substitute through January 31, 2003, "superceded" the first termination letter and that December 19, 2002 is therefore the relevant accrual date. See Pl. Mem. at 10.

In discriminatory discharge cases, "the time for filing a claim with the EEOC starts running on the date when the employee receives a definite notice of the termination, not upon his discharge." Flaherty, 235 F.3d at 137 (quoting Miller v. Int'l Telephone & Telegraph Corp., 755 F.2d 20, 23 (2d Cir. 1985)) (internal quotation marks omitted); see also Trenchfield v. Dupont Photomasks, Inc., 96 Civ. 1135 (AGS), 1997 WL 53238, at

11

*5 (S.D.N.Y. Feb. 7, 1997) (finding that Title VII claim accrued on date of receipt of termination letter); Sharpe v. American Express Co., 689 F. Supp. 294, 298-99 (S.D.N.Y. 1988) (holding that 300-day filing period for Title VII claim began to run when plaintiff received notice that his position was being eliminated, not three months later when his employment actually terminated).

Applying Second Circuit case law to the undisputed facts of this case, we find that plaintiff received definite notice of her termination on December 9, 2002, the date she concedes that she received the termination letter.   See Pl. 56.1 Statement, Ex. C at ¶ 10; Def. 56.1 Statement, Ex. S at ¶ 7, Ex. U.   In the letter, Principal Khani unambiguously informed plaintiff that her employment at P.S. 287 was going to be terminated. Principal Khani wrote that he "regret[ted] to inform [plaintiff] that this art cluster position will terminate as of 3:00 P.M. on Friday, December 20th" and suggested that she "begin inquiring about a position elsewhere, as soon as possible."    Pl. 56.1 Statement, Ex. K.   The fact that plaintiff's final day of employment at P.S. 287 was later changed to January 31, 2003 does not change the fact that she received notice of a final termination decision on December 9, 2002.    Accordingly, plaintiff had until October 5, 2003, which is 300 days from December 9, 2002, to file a charge with the EEOC.   However,

12

plaintiff waiting until October 14, 2003 to file her claims with the EEOC, and the EEOC specifically found that her claims were untimely.  See Pl. 56.1 Statement at ¶ 6, Def. 56.1 Statement, Exs. S, T.  Because plaintiff did not file her claims with the EEOC in a timely manner, her Title VII and ADA claims in this action are also time-barred.

## III.  Section 1981 Claim

To establish a Section 1981 claim, the plaintiff must show:  "(1) that she is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendants; and (3) that the discrimination concerned one or more of the activities enumerated in § 1981."  Lautere v. Int'l Business Machines Corp., 216 F.3d 258, 261 (2d Cir. 2000).  When the defendant sued under Section 1981 is a municipality or municipal agency, a plaintiff must also show that the claimed violations of his or her constitutional rights occurred as a result of a municipal policy or custom.  See Patterson v. County of Oneida, 375 F.3d 206, 226 (2d Cir. 2004).  Under the standard articulated in Monell v. New York City Dep't of Soc. Services, 436 U.S. 658, 694 (1978), a municipal policy exists where "(1) the [c]ity has promulgated a formal rule advocating or supporting the contested conduct, or (2) a single act is taken by a municipal employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken."  Edwards v. City of

13

New York, 03 Civ. 9407 (PAC), 2005 WL 3466009, at *10 (S.D.N.Y. Dec. 19, 2005) (quoting Davis v. City of New York, 228 F.Supp. 2d 327, 336-37 (S.D.N.Y. 2002)) (internal quotation marks omitted). A custom exists where the applicable practice is "so widespread as to have the force of law." Board of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997) (citing Monell, 436 U.S. at 690-91). Such a custom need not have formal approval, but plaintiff must demonstrate that it is a continuing practice. See Davis, 228 F.Supp. 2d at 337 (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).

Reading the complaint generously, plaintiff appears to allege that her termination in December 2002 amounted to discrimination violating Section 1981 because teachers in similar situations were commonly placed "in excess" rather than being terminated. See Compl. at ¶ 17-18. Defendant contends that plaintiff has brought forward no evidence whatsoever to permit a reasonable jury to conclude that her termination was pursuant to a policy, practice or custom, or otherwise meets the Monell standard. See Def. Mem. at 11. After carefully searching the record, we agree and therefore dismiss plaintiff's Section 1981 claim. See Miller v. New York City Health & Hosp. Corp., 00 Civ. 140 (PKC), 2005 WL 2022016, at *4 (S.D.N.Y. Aug. 22, 2005) (granting summary judgment on Section 1981 claim because plaintiff provided no evidence of municipal policy or custom);

14

Hawkins v. City of New York, 99 Civ. 11704 (RWS), 2005 WL 1861855, at *17 (S.D.N.Y. Aug. 4, 2005) (same); Richards v. Calvet, 99 Civ. 12172 (RJH), 2005 WL 743251, at *13 (S.D.N.Y. Mar. 31, 2005) (same).

## IV.  Non-Federal Claims

Having concluded that plaintiff's Title VII, ADA, and Section 1981 claims must be dismissed, we decline to exercise supplemental jurisdiction over plaintiff's remaining claims under the New York State Human Rights Law and the New York City Human Rights Law. See 28 U.S.C. § 1367(c)(3); Motorola Credit Corp. v. Uzan, 388 F.3d 39, 55-57 (2d Cir. 2004).[8]

### CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment is granted.  The Clerk of the Court is respectfully requested to close this case.

**IT IS SO ORDERED.**

Dated:     New York, New York
           August 28, 2006

                                    NAOMI REICE BUCHWALD
                                    UNITED STATES DISTRICT JUDGE

---

[8] We do not reach defendant's remaining arguments.

15

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

Counsel for Plaintiff

Kenneth W. Richardson, Esq.
305 Broadway, Suite 1100
New York, NY 10007

Counsel for Defendants

Daniel Chiu, Esq.
Office of the Corporation Counsel
City of New York
100 Church Street
New York, NY 10007

16